UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GAIL L. HUTCHINSON a/k/a ) | |
| GAIL L. MCCARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:05-CV-154 JVB |
| ) | |
| CUMBERLAND VALLEY SHOWS, INC., ) | |
| ANTHONY TYLER, AND ) | |
| WISDOM INDUSTRIES, LTD., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

**A.    Background**

On March 3, 2005, the Plaintiff, Gail Hutchinson, sued in the Porter Superior Court Defendants Cumberland Valley Shows, Inc., Anthony Tyler, and Wisdom Industries for personal injuries she allegedly sustained as a patron of an amusement ride owned and operated by Cumberland Valley Shows and manufactured by Wisdom Industries.[1] She alleged that Tyler was the operator of the ride and that he did not follow the ride's safety procedures, causing her severe injuries.

On April 8, 2005, the Clerk of the Porter Circuit and Superior Courts sent a summons to Cumberland Valley Shows, which it received on April 14. Also on April 8, the Clerk sent a summons to Tyler via certified mail at the headquarters of Cumberland Valley Shows. Cumberland Valley Shows refused to accept the summons, which was then returned to the state

---

[1] Defendant Wisdom Industries, LTD, has notified the Court that the Plaintiff's claims against it have been settled through mediation. (*See* DE 91.) Accordingly, when the Court speaks of Defendants, it is referring only Cumberland Valley Shows and Anthony Tyler.

court on May 23, 2005. Meanwhile, on April 15, 2005, attorney Gregory M. Bogota of Kopka, Pinkus, Dolin, & Eads filed an appearance on behalf of Cumberland Valley Shows and Tyler. Bogota never spoke with Tyler and was not authorized by him to enter the appearance on his behalf. In fact, at the time the lawsuit was filed, no one knew where Tyler was.

On May 9, 2005, Bogota removed the case to this Court. The removal papers stated: "Defendant, Anthony Tyler, is a citizen of **Tennessee**." (DE 11, ¶ 6.) Subsequently, the Plaintiff filed a motion to remand the case for lack of diversity, which the Court denied on July 21, 2005. On July 2, 2007, the Plaintiff moved for reconsideration of that Order, submitting that the Defendants falsely represented that Mr. Tyler was a Tennessee citizen, as there was no affirmative evidence for such claim. The Plaintiff insists that there is no complete diversity among the parties and that the case should be remanded to state court.

With her motion, the Plaintiff submitted documents showing that Tyler was homeless at the time he worked for Cumberland Valley Shows. For example, on the Application for Employment form filled out on March 28, 2003, he stated on the "permanent address" line that he was homeless. (DE 61-2.) In the space requiring an applicant to provide a driver's license number and the state where the license was issued, he wrote "N/A" and "Florida." (DE 61–2.) He also wrote that he was homeless on the W-4 form filled out the same day. (*Id.*) On both forms, Tyler submitted a false social security number.

In a response filed in behalf of Cumberland Valley Shows and Tyler, attorney Randall W. Graff insists that no misrepresentation was made as "the allegation that Anthony Tyler was a citizen of Tennessee certainly had evidentiary support based on the fact that his employer was based in Tennessee." (Defs.' Resp. at 2.) He also argues that there is "no basis to indicate that a

2

carnival worker whose job requires him to accompany the show from location to location was a citizen of Indiana (so as to defeat diversity)." (*Id.*) Graff also notes that Tyler's W-2 form used the Tennessee address of the Cumberland Valley Shows, suggesting that he was a citizen of Tennessee. (*See* DE 61-2.) The Defendants assert that any sanctions against them would be inappropriate, and that the parties are in complete diversity as no evidence exists that Tyler is an Indiana citizen.

Having noted that Tyler was not served with a summons, on October 16, 2007, the Court held a hearing to determine if it should consider the question of personal jurisdiction over Tyler. Also, the Court allowed the parties to present evidence and submit additional arguments on the Plaintiff's motion to reconsider. At the hearing, the parties stipulated to above facts. In addition, they agreed on the following:

The parties have not had any contact with Tyler since the commencement of this case and do not know where he lives now or lived at the time this case commenced. Cumberland Valley Shows is headquartered in Lebanon, Tennessee. It begins its carnival season in southern states and moves northward as the season progresses. After the accident at Porter County Fair, Tyler remained with the company for another two months, getting his last paycheck in either Kentucky or Oregon.

**B.      Jurisdictional Standard**

Because no federal question is involved, the Court can hear this case only if there was a complete diversity among the parties both at the time the case was filed in the Porter Superior Court and the time of removal, *see Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 910 (7th Cir.1993),

3

and if the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a). "Under the rule of complete diversity, if there are residents of the same state on both sides of a lawsuit, the suit cannot be maintained under the diversity jurisdiction even when there is also a nonresident party." *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993). A defendant who seeks to remove an action to federal court has the burden of establishing diversity of citizenship. *See Meyerson v. Showboat Marina Casino Partnership*, 312 F.3d 318, 321 (7th Cir. 2002).

"Citizenship for purposes of the diversity jurisdiction is domicile, and domicile is the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). A floating intention to live elsewhere, at some future period, does not alter a person's present domicile. *See Gilbert v. Davis*, 235 U.S. 561, 569 (1915).

However, before the Court addresses subject matter jurisdiction, it must resolve the question of whether it has personal jurisdiction over Tyler, that is whether he falls "within a court's adjudicatory authority." *Eberhart v. United States*, 546 U.S. 12, 16 (2005). As a preliminary step, for the Court to have jurisdiction over a defendant, that Defendant must have received the service of process. *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) ("This court has long recognized that valid service of process is necessary in order to assert personal jurisdiction over a defendant."). The defense that the Court lacks personal jurisdiction must be raised in party's first defensive motion, or it is effectively waived. Fed. R. Civ. P. 12(h)(1).

**C.     Discussion**

At the hearing, the Plaintiff argued that Tyler was served in accordance with Indiana

4

Rule of Trial Procedure 4.1 and that, as a result, the Court has personal jurisdiction over him. The Plaintiff insisted that, for the service to take place, only the mailing of the summons via certified mail with a return receipt requested was required. Yet, that is not what Rule 4.1 commands. Rather, Rule 4.1 dictates that the summons be both mailed and that a receipt be returned showing receipt of the letter. Ind. R. Tr. P 4.1(A)(1).

In this case, the summons was sent to Tyler at the headquarters of Cumberland Valley Shows and was returned to the state court as "not deliverable as addressed [and] unable to forward." (DE 96.) The Plaintiff did not attempt to serve Tyler elsewhere or by publication, and at the time the letter was mailed no one involved had any contact with Tyler or knew his location. Thus, Tyler did not have any notice that he was being sued. Insofar as that is the case, the Court has no personal jurisdiction over him.

The Plaintiff argues that the requirement for proper service had been waived by the appearance of attorney Bogota. In making this argument, the Plaintiff overlooks an important fact in this case: Tyler did not authorize Mr. Bogota to enter an appearance on his behalf. Since Bogota did not act as Tyler's agent, his actions cannot bind Tyler. "The rule is clear that it must appear that any agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process and, further, that the authority to accept such service cannot be shown by the extra-judicial statement of the attorney. This is an elementary law of agency." *Schwarz v. Thomas*, 222 F.2d 305, 308 (5th Cir. 1955). Furthermore, "an attorney, in his capacity as such, has no power to make any agreement for his client . . . before he has been retained to commence [a suit]; and if, under such circumstances, he assumes to act for his principal, it must be as agent and his actual authority must appear." *Id*. The principle that Mr.

5

Bogota's appearance cannot be imputed upon Tyler as a waiver of service is especially true here where there is no indication that Tyler even knows that he had been sued and that someone set out to represent him. Therefore, the Court finds no basis for asserting personal jurisdiction over Tyler.

At the hearing, the Court asked the parties if it could raise at this point of the proceeding the issue of whether it had personal jurisdiction over Tyler. The Defendant saw such inquiry as proper but the Plaintiff thought otherwise. She referred the Court to two Seventh Circuit cases: *Griffin v. Wisconsin*, 2007 U.S. LEXIS 23795 (7th Cir. 2007) (unpublished opinion) and *In Re Continental Casualty Company*, 29 F.3d 292 (7th Cir. 1994). Neither case prohibits the Court from questioning its jurisdiction over Tyler. In *Griffin*, the Court of Appeals held that "[o]nce the defendant has waived objections based on insufficiency of process [by omitting that contention from his pre-answer motions to dismiss], the district court cannot dismiss the suit for lack of personal jurisdiction." *Griffin*'s holding, however, does not control this case because no one with proper authority filed anything in Tyler's behalf. As noted above, there is no evidence that Tyler even knows about this case.

The holding in *Continental Casualty Company* stood for a different proposition than what is at issue here. *Continental* set out to decide whether a district court could "remand a case on its own motion for a defect in removal procedure." *Id.* at 292. *Continental*'s only link to this case is that the Seventh Circuit noted that "[p]rocedural defects in removal are . . . similar to the lack of personal jurisdiction and other shortcomings that may be waived and forfeited." *Id.* at 294. But as explained above, Tyler waived nothing in this case and the Court is not undoing something that he had committed himself to.

On the contrary, the Court inadvertently became aware that Tyler did not receive summons, when it was considering his citizenship. Further inquiry revealed that not only was Tyler not served, but that he also has been missing since the beginning of this case. While in similar cases these facts usually do not come out until the judgment is challenged by the defendant, having learned of them now, the Court sees only futility in proceeding as if Tyler is properly in this case. Under the facts of this case, any judgment against Tyler would be void, and the Court does not want to perpetuate this error any further. Accordingly, Tyler will be dismissed from this case on the Court's own motion for lack of personal jurisdiction over him. *Cf.* Wright and Miller, Federal Practice and Procedure § 1063 ("Although the district court usually faces the issue of personal jurisdiction on a Rule 12(b)(2) motion by the defendant, it also may raise the question sua sponte when deciding whether to enter a default judgment because the defendant has failed to appear.").

Since the Court has had no personal jurisdiction over Tyler from the very beginning of this case, at the time of its removal the parties were in complete diversity. As a result, there is no basis for remanding the case.

Incidentally, the outcome would have been the same even if Tyler were properly served but all other facts remained the same. Cumberland Valley Shows met its burden in showing that, at the time the case was filed in state court and removed to this Court, Tyler most likely was not a citizen of Indiana. In determining domicile of homeless individual for purposes of diversity jurisdiction, the court considers where the individual last lived before becoming homeless, place of prior employment, state of registration to vote, income tax returns, location of church or social organizations that he belonged to, and where he was licensed or had registered an automobile.

*Wendells Dwayne O'NEAL 202 Honorway Madison, Ala., 35758 v. Atwal, et al.*, 425 F. Supp. 944, 947 (W.D. Wis. 2006). The facts in this case do not indicate that Tyler was an Indiana citizen either before or after the accident. Tyler became employed with Cumberland Valley Shows in March 2003, when the carnival was in the southern states. On his application, he referred to a Florida driver's license. These two facts contradict that Tyler could have been an Indiana citizen at that time. Moreover, after the accident in Porter County, Tyler continued traveling with the company outside of Indiana and his last known location was in Kentucky. In light of these facts, it is more likely than not that Tyler is a citizen of some state other than Indiana.

**D.     Conclusion**

For these reasons, the Court denies the Plaintiff's Motion to Reconsider (DE 60). In addition, the Court sua sponte dismisses Defendant Anthony Tyler for lack of personal jurisdiction.

SO ORDERED on November 19, 2007.

　　s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT COURT JUDGE